UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ZEBRA STRATEGIES, INC.,                         :

                                                        :      OPINION AND ORDER
                Plaintiff,                               24 Civ. 04146 (GWG)
                                                      :

   -v.-                                                        :

ADA GONZALEZ-NAZARIO,
SEAN GOODMAN, SAGO INC.,                        :
ACCURATE MARKET RESEARCH,
JOHN AND JANE DOES 1-10,                        :
and ABC CORPORATIONS 1-10,
                                                        :

               Defendants.                   :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Zebra Strategies, Inc. ("Zebra Strategies" or "Zebra") brought this lawsuit against Sean Goodman and Sago Inc. ("SAGO") among other defendants alleging misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA") among other claims. See Zebra Strategies, Inc. v. Gonzalez-Nazario, 764 F. Supp. 3d 144, 149 (S.D.N.Y. 2025) ("Zebra I"). Goodman filed a motion to dismiss, which was granted. Id. Later, SAGO and plaintiff filed a stipulation of dismissal with prejudice. Goodmand and SAGO now move for attorney's fees.[1] For reasons stated below, Goodman and SAGO's motions for attorney's fees are denied.

---

[1] See Motion for Attorneys' Fees, filed May 6, 2025 (Docket # 119) ("Goodman Mem."); Response to Defendant Goodman's Motion for Attorney' Fees, filed June 6, 2025 (Docket # 123) ("Opp. Goodman"); Reply in Further Support of Motion for Attorneys' Fees, filed June 16, 2025 (Docket # 125) ("Goodman Reply"); Motion for an Award of Attorney's Fees and Costs, filed May 6, 2025 (Docket # 117) ("SAGO Mem."); Response to Defendant Sago Inc.'s Motion for Attorney' Fees, filed June 6, 2025 (Docket # 122); Reply to Plaintiff's Opposition to SAGO's Motion for Attorney's Fees and Costs, filed June 16, 2025 (Docket # 124) ("SAGO Reply").

I.  BACKGROUND

    A.  Facts as Alleged in the Amended Complaint

Zebra Strategies describes itself as a "market research and strategy firm which specializes in reaching marginalized, vulnerable, and hard-to-reach populations."  First Amended Complaint, filed July 16, 2024 (Docket # 53) ("Am. Compl.") at 1.  In September 2023, Zebra began to suspect that certain proprietary files it maintained containing data regarding its survey participants had been shared outside Zebra.  See id. ¶¶ 14-23.

As part of an internal investigation into the purported data breach, Carolyn Devenney, Zebra Strategies' Vice-President of Operations, "investigated the 'drive log' related to" a particular survey participant's file, which revealed that the file "had been accessed by [defendant Ada Gonzalez-Nazario] without company authorization on numerous occasions."  Id. ¶ 16.  Further investigation also "revealed that [Gonzalez-Nazario] had downloaded an overwhelming number of files at least thirty-nine (39) times over the course of about five (5) months; which contained approximately twelve thousand (12,000) proprietary database contacts."  Id. ¶ 17.  Gonzalez-Nazario did not have the "authority" to download or otherwise access such files.  Id. ¶ 36.

Zebra also "sent out a survey to their participants asking them if they were contacted by SAGO."  Id. ¶ 27.  The responses indicated to Zebra that SAGO and another defendant, Accurate Market Research ("AMR"), had come to possess the participants' personal information and a number had been "contacted by SAGO under the guise of 'following up on the Zebra survey.'"  Id. ¶¶ 28-29.  Both SAGO and AMR are market research firms.  Id. ¶¶ 4, 5.

Zebra Strategies "employ[ed] multiple cybersecurity firms to . . . investigate the breach."  Id. ¶ 31.  These firms informed Zebra Strategies that its "database had not been hacked, and that

2

there was no evidence of any 'critical threats' to the database, nor was the stolen information being sold on the dark web." Id. The firms concluded that the "breach was an inside job, which involved a person or persons with access to the database illicitly providing access to [Gonzalez-Nazario]." Id. ¶ 32. Zebra Strategies alleged that "the only individual[s] who had such access" to the database were Denine Rodney, the CEO of Zebra Strategies; Devenney; and Goodman. Id. ¶¶ 14, 32.

An "expert forensics analysis conducted by a consultant" on an unspecified date "concluded that commercially sensitive data was accessed by [Gonzalez-Nazario] which was not utilized for her work role." Id. ¶ 41. Zebra Strategies alleged that the "analysis also concluded that Goodman had deleted a plethora of files from his laptop and had deleted critical participant information such as names and dates of birth, rendering the Plaintiff's intellectual property worthless." Id. ¶ 42. Zebra alleged that Goodman and Gonzalez-Nazario "sold and/or provided" the information to SAGO and other competitors. Id. ¶ 40.

On an unidentified date, Gonzalez-Nazario and Goodman were interviewed about the breach and denied any wrongdoing. Id. ¶¶ 43, 44. Gonzalez-Nazario was subsequently terminated. Id. ¶ 46. Goodman resigned on March 29, 2024. Id. ¶ 47.

The amended complaint asserted the following causes of action: (1) theft of trade secrets under 18 U.S.C. § 1836 against all defendants, id. ¶¶ 55-63; (2) breach of contract against Gonzalez-Nazario and Goodman, id. ¶¶ 64-78; (3) conversion against Gonzalez-Nazario and Goodman, id. ¶¶ 79-81; (4) breach of duty of loyalty against Gonzalez-Nazario and Goodman, id. ¶¶ 82-85; (5) civil conspiracy against all defendants, id. ¶¶ 86-90; and (6)[2] unfair competition

---

[2] While the complaint numbers this cause of action as "7," we identify it as the sixth cause of action because the numbering of the causes of action skips from 5 to 7.

3

against SAGO and AMR, id. ¶¶ 91-92.

    B.  Procedural History

Zebra filed the original complaint on May 30, 2024.  See Verified Complaint and Request for Injunctive Relief, filed May 30, 2024 (Docket #1).  Zebra initially sought an order enjoining defendants from "further dissemination or use" of its proprietary information, see Motion for Preliminary Injunctive Relief, filed May 30, 2024 (Docket # 2), but later dropped this request, see Order, dated July 12, 2024 (Docket # 50).  On July 29, 2024, SAGO answered the amended complaint denying liability for any of the claims made against it.  See Answer, filed July 29, 2025, (Docket # 58).  The following month, Goodman, Gonzalez-Nazario and AMR moved to dismiss Zebra's amended complaint under Fed. R. Civ. P. 12(b)(6).  See Zebra I, 764 F. Supp. 3d at 149.  On September 20, 2024, the Court issued a pretrial order under which all discovery had to be completed by February 14, 2025.  See Order, dated December 10, 2024 (Docket # 80).  Zebra moved to stay discovery to allow for the issuance of a protective order, see Letter from Natalie Sulimani, dated December 5, 2024 (Docket # 82), but the Court denied this request, see Order, dated December 10, 2024 (Docket # 83).  The Court later extended the discovery deadline to April 14, 2024.  See Order, dated December 20, 2024 (Docket # 91).

In the meantime, on January 31, 2025, the Court granted Goodman's motion to dismiss on the ground that the amended complaint contained no non-conclusory allegations that Goodman misappropriated trade secrets within the meaning of the DTSA and that the amended complaint failed to state claims against him for the other causes of action it raised.  See Zebra I, 764 F. Supp. 3d.at 158, 163.  The Court also granted AMR's motion to dismiss in full and Gonzalez-Nazario's motion to dismiss in part.  Id. at 163.

4

On February 20, 2025, Zebra moved to dismiss its suit without prejudice pursuant to Fed. R. Civ. P. 41(a)(2) because it wanted to "add the defendants in this case as third-party defendants in another case currently pending against it." Zebra Strategies, Inc. v. Gonzalez-Nazario, 2025 WL 977592, at *1 (S.D.N.Y. Apr. 1, 2025) ("Zebra II"). Goodman, SAGO, and Gonzalez-Nazario opposed the motion. See id. Weighing the factors applicable to a motion to dismiss a complaint at a plaintiff's request, the Court denied Zebra's motion. See id. at *2. Subsequently, Zebra stipulated to dismissal of its suit against SAGO and Gonzalez-Nazario with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). Stipulation of Dismissal, dated Apr. 14, 2025 (Docket # 113). Judgment was then entered dismissing the case against AMR, Goodman, SAGO and Gonzalez-Nazario.

SAGO and Goodman both seek attorney's fees under the DTSA. Additionally, Goodman seeks fees under Fed. R. Civ. P. 41 and SAGO seeks fees under Fed. R. Civ. P. 54. We address the three bases for claiming fees next.

## II. ATTORNEY'S FEES UNDER THE DTSA

The DTSA provides in relevant part that a court may "award reasonable attorney's fees to the prevailing party" if "a claim of the misappropriation [of trade secrets] is made in bad faith." 18 U.S.C. § 1836(b)(3)(D). The statute provides that bad faith "may be established by circumstantial evidence." Id. As one court has noted, the statute sets forth "several requirements for the award of attorney fees under the DTSA: (1) the recipient must be 'the prevailing party'; (2) . . . 'a claim of the misappropriation is made in bad faith . . .'; and (3) the court must in the exercise of its discretion determine that an award of fees is warranted." Recoop LLC v. Outliers Inc., 2025 WL 1725024, at *15 (S.D.N.Y. June 20, 2025) (quoting 18 U.S.C. § 1836(b)(3)(D)).

5

On the issue of bad faith, "[t]he Second Circuit has not set forth the showing that must be made to demonstrate that a [misappropriation] claim 'is made in bad faith' so as to permit an award of attorney's fees." Id. The Second Circuit, however, has had occasion to interpret the term "bad faith" in the context of a different fee-shifting statute. In Kerin v. United States Postal Service, 218 F.3d 185, 190 (2d Cir. 2000), the Second Circuit was called upon to interpret the term "bad faith" as used in the Equal Access to Justice Act, 28 U.S.C. § 2412(b). To elucidate the meaning of the term "bad faith," Kerin looked to the standard applicable where a federal court imposes fees for bad faith litigation arising from its inherent power. Id. at 190. Kerin concluded that

> to award bad faith fees, the district court must find that the losing party's claim was (1) meritless; and (2) brought for improper purposes such as harassment or delay. . . . The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice.

Id. at 190 (internal citation and punctuation omitted).

At least two courts have adopted the Kerin standard for the DTSA. See Bronx Conservatory of Music, Inc. v. Kwoka, 2024 WL 3521804, at *8 (S.D.N.Y. Apr. 23, 2024), adopted by 2024 WL 3521853 (S.D.N.Y. July 23, 2024); Insurent Agency Corp. v. Hanover Ins. Co., 2020 WL 86813, at *8 (S.D.N.Y. Jan. 8, 2020), adopted by 2020 WL 1080774 (S.D.N.Y. Mar. 6, 2020)). More recently, in Recoop LLC, Judge Liman surveyed the standards applied by courts both within this Circuit and outside the Circuit to determine "bad faith" under the DTSA and arrived at the following test: "that [the] plaintiff's suit be both 'objectively specious' and that the plaintiff exhibited subjective bad faith in making the claim." 2025 WL 1725024, at *15. In the end, we believe the Kerin and Recoop LLC formulations are quite similar. Both articulate a conjunctive, two-pronged inquiry into bad faith, with the first prong looking to the substance of a DTSA plaintiff's misappropriation claim and the second prong looking to the plaintiff's

6

subjective motives. Under either formulation, the DTSA defendant seeking attorney's fees must show that the plaintiff's misappropriation claim objectively lacked substance and that the plaintiff subjectively acted with an improper purpose.

    A. <u>Goodman</u>

Zebra does not contest that Goodman is a "prevailing party"— a sensible concession given that Goodman secured a judgment on the merits in his favor. <u>See</u> <u>Brinkmann v. Town of Southold, New York</u>, 2023 WL 11969895, at *4 (E.D.N.Y. June 20, 2023) ("there is no question Defendant is a 'prevailing party,' because it has secured a judgment on the merits in its favor—its motion to dismiss was granted and Plaintiffs' entire Complaint was dismissed"), <u>adopted by</u> 2024 WL 4355514 (E.D.N.Y. Sept. 30, 2024).

As to the bad faith inquiry, Goodman emphasizes that his claim of bad faith "is not based on the allegations in Plaintiff's complaint" but rather "is based on the actual facts that run contrary to the allegations of Plaintiff's complaint." Goodman Reply at 2. Goodman focuses on the allegation in paragraph 19 of the amended complaint, <u>see</u> Goodman Mem. at 3, that Goodman was "[t]he only person who could have provided access to [Gonzalez-Nazario] to these files." Am. Compl. ¶ 19. To challenge this allegation, Goodman has submitted a sworn declaration in which he asserts that Devenney was "was the person responsible for providing and controlling access and permissions" to Zebra's Google Drive, which Goodman contends was one of two platforms that contained the trade secrets at issue. Declaration of Sean Goodman in Support of Motion for Attorney Fees, dated Mar. 10, 2025 (Docket # 100-1) ("Goodman Decl.") at ¶ 8. In fact, he states that he did not himself have the ability to provide employees such as Gonzalez-Nazario with access to the Google Drive. <u>Id.</u> ¶ 9. He also states that Devenney had herself given Gonazlez-Nazario and other employees access to the Google Drive. <u>Id.</u> ¶ 10.

7

The other platform that contained information on survey participants is called "Voxco." Id. ¶ 12. Goodman concedes that he had the ability to provide "certain permissions" to Voxco (though he states he acted at the direction of Devenney in giving such permissions). Id.

Because in reply Zebra supplied no sworn testimony that contradicted anything in Goodman's declaration, Goodman argues that the record shows that Zebra "misrepresented the facts" in its amended complaint, which "demonstrates Plaintiff's claim against Goodman was meritless." Goodman Reply at 3. Given Goodman's declaration, and Zebra's failure to contest it, the Court accepts Goodman's assertion was not the "only person who could have provided" Gonzalez-Nazario with access to Zebra's purported trade secrets as a technical matter. But Zebra's amended complaint acknowledged that, in addition to Goodman, CEO Denine Rodney and Devenney had "access" to the firm's "database." Am. Compl. ¶ 32. In light of this acknowledgment, paragraph 19 is reasonably read as alleging that Goodman was the "only person who could have provided" Gonzalez-Nazario with access to Zebra's trade secrets because Rodney and Devenney in fact did not do so. With this context, paragraph 19 is not necessarily the "misrepresentation" Goodman portrays it to be. Goodman Reply at 3.

Less clear is whether paragraph 19 is false in light of Goodman's uncontradicted assertion that Devenney gave Gonazlez-Nazario and other employees access to the data in the Google Drive. Goodman Decl. at ¶ 10. After all, if Gonazlez-Nazario had been given access to the trade secrets at issue in the amended complaint by Devenney, the complaint's assertion that Goodman was the only person to do so would be plainly false. The problem, however, is that Goodman's declaration is not clear as to whether access to the Google Drive is coterminous with the trade secrets at issue in this case — in particular, the "commercially sensitive data" that is described in the amended complaint. Am. Compl ¶ 41. Indeed, while Goodman's declaration

8

states that the Google Drive contained "survey" data, Goodman Decl. ¶ 7, the amended complaint by contrast alleges that Gonzalez-Nazario improperly accessed what appears to be non-"survey" data, such as "pricing files, invoices and statements of work." Am. Compl. ¶¶ 36-37. The Goodman declaration is not clear as to how access to such materials could be obtained. In light of this, Goodman's assertions regarding employee access to the Google Drive are not enough to show that paragraph 19 was false.[3]

Given these circumstances, the first prong of the bad faith inquiry is not met. But even if we thought otherwise, the motion for fees would have to be denied because Goodman has not made out the second prong, which requires a showing of subjective bad faith: specifically, that the case was "brought for improper purposes such as harassment or delay." Kerin, 218 F.3d at 190. As to this prong, Goodman's argument revolves around Zebra's conduct during the pendency of the instant action (and in particular, during discovery). See Goodman Mem. at 6-7.

Goodman asserts that Zebra "[n]ever had an intent to produce discovery" and "continued to drag its feet on discovery, missing deadlines and stalling the entry of a protective order." Goodman Mem. at 6. To support this contention, however, Goodman cites only to two email chains between counsel that are difficult to decipher but appear to involve exchanges of drafts of a protective order and the provision of responses to discovery requests. See Goodman Mem. at 6 (citing Docket ## 99-5, 99-6). These documents do not show improper conduct by plaintiff and thus do not meet Goodman's burden to show subjective bad faith.

---

[3] Goodman also refers to the fact that the amended complaint was conclusory, citing to the Court's order and opinion granting his motion to dismiss Zebra's amended complaint. Goodman Mem. at 5-6. In light of Goodman's unequivocal statement that his claim of bad faith is not based on plaintiff's "failure to plead a plausible claim," Goodman Reply at 3, we see no need to address the effect of the dismissability of the amended complaint. In any event, case law is clear that "prevailing parties are not entitled to fees merely because they have been successful on a motion to dismiss," Silberstein v. Fox Ent. Grp., Inc., 536 F. Supp. 2d 440, 443 (S.D.N.Y. 2008).

Goodman faults plaintiff for requesting a stay of discovery, Goodman Mem. at 6, but that request was for a stay only until the parties could agree on the contents of a protective order. Letter from Natalie Sulimani, dated December 5, 2024 (Docket # 82).[4]  Goodman's claim that plaintiff "continued to do nothing and ultimately produced nothing" is not supported by any citation to the record.  See Goodman Mem. at 6.

In sum, Goodman has not met his burden of showing that Zebra's misappropriation claim was "brought for improper purposes such as harassment or delay," Insurent Agency Corp., 2020 WL 86813, at *9 (quoting Kerin, 218 F.3d at 190) or "simply to inflict harm on its adversary," Recoop LLC, 2025 WL 1725024, at *16.  Thus, he is not entitled to an award of attorney's fees under the DTSA.

B.  SAGO

Whether SAGO is a prevailing party turns on the effect of the stipulation between the parties to dismiss the action with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  See Stipulation of Dismissal, dated Apr. 14, 2025 (Docket # 113).  There appear to be differing views among the district courts as to the effect of such a stipulation. Compare Bagwell v. World Wrestling Ent., Inc., 2018 WL 4697301, at *2 (D. Conn. Jan. 22, 2018) (stipulation of dismissal with prejudice did not render defendant a prevailing party), with Opoku v. Cnty. of Suffolk, 123 F. Supp. 3d 404, 412 (E.D.N.Y. 2015) ("A defendant in an action that is voluntarily dismissed with prejudice is a prevailing party for purposes of determining whether attorney's fees are warranted under § 1988 and Rule 54(d)").  It is not necessary to resolve this question, however, because, like Goodman, SAGO has failed to show bad faith.

---

[4] The Court notes that plaintiff incorrectly asserts that the stay of discovery was "granted."  Opp. Goodman at 3.  In fact, the stay of discovery was denied.  See Order, dated December 10, 2024 (Docket # 83).

10

SAGO argues that Zebra's suit was without merit because (1) the allegations of the amended complaint were false and that it repeatedly told Zebra this, and (2) Zebra did not "put forth a cognizable cause of action" as to SAGO because Zebra "failed to provide any details about the alleged trade secrets Goodman and/or [Gonzalez-Nazario] allegedly misappropriated to Sago and how that alleged misappropriation was accomplished." SAGO Mem. at 5, 3.

As to the first ground, SAGO provides no competent evidence that the allegations are false. Instead, SAGO provides a "certification" of its attorney asserting that the amended complaint's allegations are false as well as responses to requests for admissions that were signed by an attorney. See Certification of Gerald J. Resnick, dated May 6, 2025 ("Resnick Cert.") (Docket # 117-1), ¶¶ 10, 11; Defendant Sago's Response to Plaintiff's Requests for Admissions, dated Nov. 20, 2024 (annexed as Ex. B to Resnick Cert.). Nothing in the attorney's statement reflects that the attorney has any personal knowledge of the allegations of the amended complaint. In any event, the fact that the allegations of a complaint are ultimately proven to be false does not by itself reflect objective bad faith by the filer of the complaint.

Second, the Court has never ruled that Zebra did not "put forth a cognizable cause of action" as to SAGO. SAGO Mem. at 5. In fact, SAGO never moved to dismiss Zebra's amended complaint.

SAGO asserts that the amended complaint's allegations "failed to provide any details about the alleged trade secrets Goodman and/or [Gonzalez-Nazario] allegedly misappropriated to Sago and how that alleged misappropriation was accomplished." SAGO Mem. at 3. SAGO never tested this assertion by moving to dismiss, however. And, as it turns out, the Court's decision ruling on the motion to dismiss filed by Goodman, AMR, and Gonzalez noted that the allegations against SAGO were "relatively detailed" and in part "non-conclusory." Zebra I, 764

11

F. Supp. 3d at 156, 158. In any event, even if the amended complaint failed to state a claim against SAGO, it does not mean that the allegations themselves were "meritless" or "objectively specious." See Silberstein, 536 F. Supp. 2d at 443 ("prevailing parties are not entitled to fees merely because they have been successful on a motion to dismiss").

SAGO takes Zebra to task for bringing a misappropriation claim "based solely on suspicion, not facts" and for undertaking a pre-suit investigation "limited to the internal misconduct of employees [Gonzalez-Nazario] and/or Goodman, not any independent misconduct or unlawful acts by SAGO." SAGO Reply at 7. But "[a]t the outset of a case, the plaintiff does not always know what discovery will reveal." Recoop LLC, 2025 WL 1725024, at *15. "[C]ourts are sensitive to 'the common scenario where the trade secrets plaintiff may not know which parts of its trade secrets have been misappropriated or cannot determine the full scope of its claims until it gains a better understanding of how a defendant operates.'" Insurent Agency Corp., 2020 WL 86813, at *9 (quoting Uni-Sys., LLC v. U.S. Tennis Ass'n, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017)). Accordingly, SAGO has not demonstrated that Zebra's misappropriation claim met the first prong of the bad faith test.

SAGO also fails to meet the second prong of the bad faith inquiry. SAGO asserts that the Court's "refusal to grant Plaintiff's Motion for Voluntary Dismissal of the Complaint without prejudice . . . was based on proofs submitted by Defendants which clearly established bad faith on the part of the Plaintiff in bringing its claims, coupled by its refusal to engage in discovery." SAGO Mem. at 5. However, the Court's order denying Zebra's Rule 41(a)(2) motion to dismiss its suit without prejudice made no finding as to bad faith. More precisely, the Court, in considering whether the parties had shown "any undue vexatiousness on the plaintiff's part,"

12

made no finding that Zebra had acted improperly. Zebra II, 2025 WL 977592, at *1 (quoting Camilli v. Grimes, 436 F.3d 120, 123 (2d Cir. 2006)).

SAGO points to Zebra's "refusal to engage in discovery." SAGO Mem. at 5. Unlike Goodman, SAGO at least supplies a sworn statement as to what occurred between the parties during the discovery phase of the case. See Resnick Cert. In that statement, SAGO's attorney, Resnick, asserts that Zebra "failed to produce a single document in response to any of the Defendant's discovery requests or take a single deposition." Id. ¶ 13. But Resnick concedes that plaintiff in fact responded to SAGO's discovery requests, although it asserted objections rather than producing documents. Id. ¶ 12. SAGO never brought to the Court's attention any infirmity in those responses and thus the record does not show that Zebra acted improperly in making those objections. While the Court finds it concerning that Zebra did not engage in any discovery of its own, see id. ¶ 16, this is insufficient to allow a finding that Zebra brought its claims against SAGO "for improper purposes such as harassment or delay," Insurent Agency Corp., 2020 WL 86813, at *9 (quoting Kerin, 218 F.3d at 190 (2d Cir. 2000)) or "simply to inflict harm on its adversary," Recoop LLC, 2025 WL 1725024, at *16. Thus, the second prong of the inquiry is not met, and SAGO is not entitled to an award of attorney's fees under the DTSA.

III. FEES UNDER RULE 41

Under Fed. R. Civ. P. 41(a)(2), a court may dismiss a suit at a plaintiff's request "on terms that the court considers proper." Goodman is not entitled to attorney's fees under Fed. R. Civ. P. 41(a)(2), however, because the Court did not dismiss Zebra's suit under Rule 41(a)(2). Instead, the parties filed a joint stipulation of dismissal as permitted by Rule 41(a)(1)(A)(ii). Indeed, far from dismissing this case under Rule 41(a)(2), the Court denied Zebra's earlier Rule 41(a)(2) motion to dismiss. See Zebra II. In denying the motion, the Court observed, "[B]ecause

13

there is no dismissal under Fed. R. Civ. P. 41(a)(2) at this time, none of the defendants is entitled to fees under case law interpreting Fed. R. Civ. P. 41(a)(2)." Zebra II, 2025 WL 977592 at *2. That observation still holds.

IV. <u>FEES UNDER RULE 54</u>

Rule 54(d)(2)(B)(ii) directs a party seeking attorney's fees to "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." Thus, the Rule "does not provide an independent source of authority for a fee award." Cameau v. Nat'l Recovery Agency, Inc., 2018 WL 4522104 (E.D.N.Y. Aug. 6, 2018), at *4, adopted by 2018 WL 4853050 (E.D.N.Y. Sept. 28, 2018). "Rather, Rule 54(d)(2) is a procedural guide to be utilized where attorneys' fees are elsewhere authorized." Id. Other than the DTSA, SAGO's motion for attorney's fees fails to specify a statute, rule, or other grounds entitling it to attorney's fees.

SAGO's reply invokes Fed. R. Civ. P. 11 for the first time. SAGO Reply at 2-3. While Rule 11 does provide an independent basis for awarding attorney's fees, it also sets forth a detailed procedure for obtaining such an award. See, e.g., Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175-76 (2d Cir. 2012). SAGO has not demonstrated compliance with this procedure.[5]

---

[5] SAGO has moved for costs in addition to attorney's fees "pursuant to 18 U.S.C. Sec. 1836(b)(3)(D) and FRCP 54." SAGO Mem. 18 U.S.C. § 1836(b)(3)(D) does not authorize a court to award costs. While a prevailing party may obtain costs under Fed. R. Civ. P. 54(d), Local Civil Rule 54.1(a) requires any party seeking costs to "file with the clerk a notice of taxation of costs by ECF" within 30 days after the entry of final judgment. SAGO failed to file such a notice and is thereby "deemed to have waived costs" under the terms of Local Civil Rule 54.1(a).

## V. CONCLUSION

For the foregoing reasons, Goodman and SAGO's motions for attorney's fees (Docket ## 117 and 119) are denied.

Dated: September 19, 2025

New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge